UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

WINDY LUCIUS

    Plaintiff,

v.

IDEAL 1 CORP,
d/b/a Ideal Baby & Kids

    Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Windy Lucius ("Plaintiff") sues Defendant, Ideal 1 Corp, d/b/a Ideal Baby & Kids ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs under Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. § 2201 and § 2202.

3. Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major

life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help her navigate a world of goods, products and services like the sighted. The internet and websites provide her with a window into the world that she would not otherwise have. She sues Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff uses the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") used worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to her disability, Plaintiff cannot read computer materials and/or access the internet and websites for information without help from appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link

says the word 'clickable.' Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights, and ensuring, that places of public accommodation and/or their respective and associated websites have complied with the ADA and any other applicable disability laws, regulations, and ordinances.

8. Defendant, Ideal 1 Corp, is a Florida for-profit corporation authorized and doing business in the State of Florida, which owns and/or operates stores branded "Ideal Baby & Kids", a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, located within this District. Defendant's merchandise is offered and available to the public through its website. Defendant's store is a public accommodation pursuant to 42 U.S.C. §12181(7)(E), §12182, and 28 C.F.R. §36.104(2)

9. As the owner, operator, and/or controller of stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA, because Defendant is a private entity which owns and/or operates "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

10. Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(E), §12182, and 28 C.F.R. §36.104(2). Defendant also offers those items to the public through its website.

11. Defendant also controls, maintains, and/or operates an adjunct website, https://idealbaby.com ("Website"). One of the functions of the website is to provide public information about Defendant's public accommodation, including special sales, new arrivals, services, privileges, benefits and facilities available to patrons at physical locations. Defendant also sells to the public its merchandise through the website, which acts as a point of sale for merchandise available in, from and through Defendant's physical stores.

12. The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individual persons' homes, portable devices and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's place of accommodation. For example, the website provides the list of products, pricing, special sales, as well as all the ability to shop at their online store and contact them. Defendant's website provides access to benefits of Defendant's physical stores and Plaintiff was denied those benefits when she could not access Defendant's website. As such, the website has integrated with and is a nexus to Defendant's brick and mortar location. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodations of an entity[.]"

    c.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

    d.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

    e.    42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

    f.    42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

    g.    42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

        h.    42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

13.    As the owner or operator of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the website and the content therein, including the ability to shop through the website, and contact the desired location.

14.    Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

15.    Plaintiff attempted to access and/or utilize Defendant's website to test for accessibility, browse through the merchandise and online offers to educate herself as to "Ideal

**Lucius v. Ideal 1 Corp**
**Complaint for Injunctive Relief**

Baby & Kids" merchandise, pricing, specials, and locations, but was unable to, and she is still unable to enjoy full and equal access to the website and/or understand the content therein because several portions of the website do not interface with the JAWS Screen Reader software. Features of the website that are inaccessible include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i. Guideline 2.1.1 – Keyboard. The submenu that is activated when a mouse hovers over the 'Products' link is not announced or accessible. As shown in the screen capture, when focus moves to the collapsed 'Products' link, the screen reader announces, "Products (visited) link." The user would not know that a submenu exists. Pressing enter on this link then immediately opens the 'Products' collection page, but the submenu never expands.

ii. Guideline 2.4.3 – Focus Order. The promotional pop-up window is not announced or given focus when it is displayed. As shown in the screen capture, once the pop-up appears, nothing is announced by the screen reader to alert users of its presence, and tab focus continues on the webpage behind it.

iii. Guideline 2.4.3 – Focus Order (2). The user must press the tab key approximately 280 times to get through the rotating carousel of collection links on the home page. As shown in the screen capture, once the user reaches this carousel, tab focus continuously loops through its links, which are announced as "(collection name) (long number) unlabeled graphic link." After tabbing approximately 280 times and hearing the same group of links announced over and over again, focus finally moves down the page.

iv. Guideline 2.4.3 – Focus Order (3). Filters are not accessible on collection pages. For example, as shown in the screen capture, tab focus moves only to the pre-expanded 'Color' filter section on a collection page. Tab focus skips all collapsed filters before and after this pre-expanded section.

v. Guideline 2.4.3 – Focus Order (4). The 'Discount code or gift card' input field on the checkout page does not receive tab focus until after the 'Pay Now' button and additional links (Terms of Service, Privacy Policy, etc.) which usually signify the end of a page. It is unlikely that a screen reader user would continue tabbing past the 'Pay Now' button and footer links to find this field on the page.

vi. Guideline 4.1.2 – Name, Role, Value. Color options are not labeled. As shown in the screen capture, when the user navigates through the color radio buttons with the arrow keys, each is announced as "radio button checked required (#) of (#), SKU (#), regular price ($)." Users hear the different SKU numbers for each of the available color options, but there is no announcement of the color itself. Non-sighted users would not know which color options are available to them or that these buttons represent those color

   options.

vii. Guideline 1.4.5 – Images of Text. The images of text in the carousel on the home page cannot be read with the screen reader. For example, as shown in the screen capture, the 'Valentine's Sale' image is announced only as "1 of 3 slide" when it receives focus with the arrow keys. None of the text detailing the special offer displayed on this image is announced, so non-sighted users would not know the offer exists. This was tested multiple times, on different computers, using both tab and arrow key navigation, and none of the content was ever announced.

16. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because stores are open to the public, are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(B). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Preexisting obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

17. As a beneficiary of the Website which serves as a gateway to its place of public accommodation, Defendant must comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a Website that is accessible to Plaintiff so that she (as a visually impaired person) can enjoy full and equal access to the Website and the content therein.

18. Plaintiff continues to attempt to use the website and/or plans to continue to attempt

to use the Website in the near future, and in the alternative, Plaintiff intends to monitor the Website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

19. The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, frustrated, and humiliated, and gave her a sense of isolation and segregation, as she is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

20. As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its Website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

    b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

    c. in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

    d.  by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

    e.  by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

    f.  despite separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

    g.  by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

    h.  by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  21.  As a tester using screen reader software, Plaintiff is unable to effectively access,

navigate, and communicate with Defendant through the Website due to her blindness and the Website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

22. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to use the Website, but she is presently unable to do so as she is unable to effectively communicate with Defendant due to her blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to her blindness and the Website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

23. Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

24. Plaintiff is continuously aware of the violations at Defendant's website and knows that it would be a futile gesture to attempt to use the website as long as those violations exist unless she is willing to suffer additional discrimination.

25. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website. By continuing to operate its website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to utilize the website unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff of opportunity offered to the general public.

26. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the ADA.

27. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the website to avail herself of the benefits, advantages and services therein, and/or to assure herself that this website has complied with the ADA so that she and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

28. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

29. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily

accessible to and usable by Plaintiff and other persons with vision impairment.

30. As a result of the foregoing, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have her a reasonable attorneys' fees, costs and litigation expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

**WHEREFORE,** Plaintiff, Windy Lucius demands judgment against Defendant, Ideal 1 Corp, d/b/a Ideal Baby & Kids, and requests the following injunctive and declaratory relief:

a) The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b) The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c) The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d) That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e) That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time to allow Defendant to undertake and complete corrective procedures;

f) That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

**Lucius v. Ideal 1 Corp**
**Complaint for Injunctive Relief**

g) An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h) Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this March 24, 2025.

By: */s/ J. Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
**J. COURTNEY CUNNINGHAM, PLLC.**
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*